CALVIN YORK ET AL. v. J. C. HUTCHESON.

Decided December 2, 1904.

**1.—Limitation—Adverse Possession.**

Although a deed from defendant's mother, as survivor of the community, to plaintiff may have been intended to convey only her half interest, the possession of plaintiff, who claimed all the land under a purchase at foreclosure sale, was not that of a tenant in common with defendants, but was adverse to their claim as evidenced by a sale of part after obtaining said deed, and he was entitled to the land under the five years statute of limitation.

**2.—Same—Survivor of Community—Transfer of Homestead Interest.**

When the surviving wife sells her interest in the community homestead the homestead right terminates and the heirs of the deceased husband are entitled to possession of their interest in the property, from which time limitation begins to run against them.

**3.—Same—Minor—Marriage.**

Limitation begins to run against a minor upon her marriage.

Appeal from the District Court of Grimes. Tried below before Hon. J. M. Smither.

*W. W. Meachum,* for appellants.—The court should not have instructed the jury to find for the plaintiff on his pleas of the statutes of limitation of three, and five years,—the evidence on these issues being conflicting, and sufficient to support a verdict for defendants. Rev. Stat., art. 1317; Cobb v. Beall, 1 Texas, 342; Gay v. McGuffin, 9 Texas, 501; Golden v. Patterson, 56 Texas, 628; Scott v. Texas & P. Ry. Co., 93 Texas, 625.

*Hutcheson, Campbell & Hutcheson,* for appellee.—1. When Mrs. York married all disability was removed, and the cause of action begun. White v. Latimer, 12 Texas, 62; Jackson v. Houston, 84 Texas, 626; Thompson v. Craig, 24 Texas, 598; Ragsdale v. Barnes, 68 Texas, 504; McDonald v. Hovey, 110 U. S., 626; Miller v. Leroy, 132 U. S., 693.

2. The contention of appellant is, if we understand the matter right, that the mother had a life interest in the estate of the 200 acres which existed up to the time of her death, and that during that time, plaintiff could not institute suit, and counsel invokes the case of Beatty et al. v. Kleimer, 8 Texas Ct. Rep., 79. We beg to suggest that counsel has carelessly read that case, and is trying to establish a principle which belongs to the remainderman of an estate, instead of a party who has a present interest in the estate and always had, coordinate with their mother. It is perfectly clear that the mother had a fee estate in 100 acres of that land, and that the children had fee simple interest in 100 acres, except as to the debts; she only had permissive *use* for her life, and the moment she *left* that right of use, the fee simple estate descended unincumbered thereby to the child, and cause of action accrued immediately. Any contention to the contrary would be inconsistent with all previous interpretations and all present conceptions of what

the rights of two or more cotenants are to the same property. She had no exclusive right even to use; they had a coordinate right to use; and she had no title, but the use for life until voluntarily discontinued.

PLEASANTS, Associate Justice.—This is an action of trespass to try title brought by appellee against the appellants, Calvin York and his wife, Georgia York. The land in controversy is the undivided one-half of a tract of 177 acres out of the west quarter of the Jonathan Gillette league in Grimes County. The suit was brought to recover the whole of the quarter of the league containing 1,107 acres of land, but the defendants disclaimed title as to all of the 1,107 acres except an undivided one-half of a tract of 177 acres, known as the Michael Baker tract.

Plaintiff's petition alleged title to the land by regular chain of conveyance from and under the sovereignty of the soil and also by limitation of three, five and ten years.

The defendants answered by plea of not guilty, and in reply to plaintiff's claim of title by limitation, by special pleas setting up infancy and coverture and an outstanding life estate in favor of Mrs. Aurelia Baker.

The trial judge instructed a verdict in plaintiff's favor on his claim of title by limitation of three and five years, and upon the return of such verdict judgment was rendered in accordance therewith.

The facts disclosed by the record are succinctly stated as follows: Both plaintiff and defendants claim title under J. S. Gillette. In 1863 J. S. Gillette conveyed the 1,107 acres of land to Jacob Shannon and Joseph Bates, taking their notes for the purchase money. In 1871 A. R. Dillon, administrator of the estate of Susan McClellan, to whom one of these notes had been indorsed by Gillette, brought suit against Shannon and Bates on said note to recover the amount due thereon and to foreclose the vendor's lien on the land. This suit was prosecuted to judgment and the lien on the land foreclosed and an order of sale awarded. At the sale under this judgment in August, 1871, W. A. Carrington and J. C. Hutcheson became the purchasers of the 1,107 acres of land. Carrington conveyed his interest in the land to Hutcheson by deed of date May 20, 1878. This deed was never recorded. On September 3, 1867, J. S. Gillette conveyed to Michael Baker by warranty deed a tract of 177 acres out of the 1,107-acre tract. The consideration recited in the deed is $350 cash, the receipt of which is acknowledged. Under this deed, which was recorded January 8, 1868, Baker went into possession of the 177 acres of land and was living thereon at the time of his death in 1870.

On December 5, 1871, Carrington and Hutcheson obtained from Mrs. Aurelia Baker, the widow of Michael Baker, the following conveyance:

"The State of Texas, Grimes County. Know all men by these presents, that I, Aurelia Baker, of the county of Grimes and State of Texas, for and in consideration of the sum of one hundred and fifty ($150) dollars to me in hand paid by Hutcheson & Carrington, a firm of practicing attorneys in the county of Grimes and State of Texas, composed of J. C. Hutcheson and W. A. Carrington, the receipt of which consid-

eration is hereby acknowledged, and in consideration of the fact that I am indebted to Jas. S. Gillette for the tract of land hereinafter described, there being outstanding against me for the purchase money of the same, a note or notes of the amount, to wit, of three hundred dollars, which they, the said Hutcheson & Carrington, hereby release me from; and in order to fully compromise and settle the controversy and lawsuits respecting said premises, for all the above consideration to me owing, I do hereby sell, alien, assign, forever release unto them, the said Hutcheson & Carrington, all my right, title and interest in and to the following described tract of land lying and being situated in the county of Grimes, and State of Texas, and described as follows, containing one hundred and seventyseven (177) acres, being on the east line of fourth of a league of land granted to the heirs of Jonathan S. Gillette, deceased, running thence west 1,000 varas to the west line of said survey; thence north 1,000 varas; thence east 1,000 varas to the east line of said fourth of a league; thence south 1,000 varas to a tree marked B, the place of beginning. To have and to hold the above described premises with the rights, members and improvements thereon or to the same appertaining unto them, the said Hutcheson & Carrington, them and their heirs forever, I holding said premises under them, the said Hutcheson and Carrington. Witness my hand and scrawl for seal, this 5th day of December, A. D. 1871. (Signed) Aurelia Baker."

Appellee testifies that at the time this deed was executed Hutcheson & Carrington held a note for $300 executed by Michael Baker in favor of J. S. Gillette in part payment of the purchase money for the 177 acres of land.. This note was surrendered to Mrs. Baker and she was paid $150 in cash as recited in the deed. The recital in the deed from Gillette to Baker that the $350 was paid in cash is the only evidence in the record tending to contradict this testimony.

Shortly after this conveyance was executed Mrs. Baker and her minor children moved from the place and Hutcheson & Carrington were left in exclusive possession of the entire 1,107 acres. The undisputed evidence shows that this possession continued in Carrington and Hutcheson until the sale by the former to the latter in 1878; and that Hutcheson held exclusive and continuous possession until 1894. The taxes on the land were paid by Hutcheson from 1878 to 1896. During all of this time be held actual visible possession of the 177 acres, except 52 acres thereof which he sold to Green Clark in 1879. The appellant, Mrs. Georgia York is the daughter of Michael and Aurelia Baker. She was born in 1869 and married appellant Calvin York on August 17, 1885. Michael Baker left one other child, who is now Mrs. Carrie Furgerson, a feme sole. Mrs. Fergerson was about 3 years old at the time of her fathers death. It is not shown when she married nor how long she had been a feme sole.

Mrs. York claims an undivided one-half of the 177 acres for herself and her sister, Mrs. Furgerson, as heirs of their father, Michael Baker. Mrs. Aurelia Baker died in March, 1892.

Appellants took possession of the 177 acres in December, 1901, and shortly thereafter appellee brought this suit.

Upon these facts no verdict other than one in favor of plaintiff could have been properly rendered, and it is therefore unnecessary to consider appellants' several assignments of error in detail.

It is not contended by appellants that appellee's possession of the land in controversy from 1878 to 1894 was not of that character which would entitle him to prescribe under the several statutes of limitations, nor that there was any failure to show the payment of taxes for these years; but it is insisted that said possession did not vest a title in appellee for the following reasons:

First. Because the deed from Mrs. Baker to Carrington and Hutcheson only conveyed her community interest in the land and her homestead rights therein, and that appellee in holding under said deed was a tenant in common with the heirs of Michael Baker, and therefore his possession was not adverse as to them.

Second. Because the right of Mrs. Baker to occupy the premises as a homestead during her life was an estate for life which she could and did not convey to appellee, and that during the pendency of this life estate appellants could not have recovered the possession of the land, and therefore limitation did not begin to run against them until after Mrs. Baker's death in 1892.

.Neither of these propositions is sound. If it be admitted that the deed from Mrs. Baker does not by its express terms convey the whole of the community title of herself and deceased husband in the 177 acres of land and that the evidence as to what interest was intended to be conveyed thereby is not uncontradicted, the mere acceptance by the appellee of a deed to Mrs. Baker's interest would not under the facts of this case make him a tenant in common with the heirs of Michael Baker and preclude him from asserting title by limitation against them. The undisputed evidence shows that he had a deed to all of the property and was asserting ownership thereto prior to the time he procured this deed. After this deed was executed he evidenced his claim of title to all of the land in the most emphatic manner by conveying a specific portion of it to Green Clark. All of the evidence shows that his possession of and claim of ownership in the land was hostile and adverse to all the world. His purchase from Mrs. Baker was not a recognition of any title in her or the heirs of Michael Baker, but was, as shown by all the evidence, a compromise on the part of appellee or a mere buying of his peace.

The principle that limitation does not run against a remainderman until the termination of the life estate has no application in this case. The right of the survivor of a community to occupy the community homestead is a personal right and not an estate in land which can be assigned or conveyed so as to vest the right to such use and occupancy in the assignee. It follows that when the surviving wife sells her interest ·in a community homestead the homestead right terminates and the heirs of the deceased husband are entitled to possession of their interest in the property.

While the deed from Carrington to appellee was never recorded and that from Mrs. Baker to him was not duly registered because its acknowledgment was insufficient, and therefore appellee could not under

either of these deeds secure title under the five years statute of limitation, we see no reason why his holding under the deed to Carrington and himself, the other requisites of the statute having been complied with, should not perfect his title under the five years statute. He has certainly shown title or color of title under the agreed common source, and a compliance with all the requirements of the three years statute.

Appellee's adverse possession having begun during the minority of Mrs. York, under the familiar rule that there can be no tacking of disabilities, limitation began to run against her upon her marriage in 1885. The undisputed evidence showing that this adverse possession was continuous from 1885 to 1894; the trial court properly held as a matter of law that appellee had established title by limitation, and did not err in instructing the jury to return a verdict in his favor.

The judgment of the court below is affirmed.

*Affirmed.*